UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Patricia K.,[1] | Case No. 24-cv-2275 (SGE) |
| Plaintiff, | |
| v. | **ORDER** |
| Frank Bisignano, *Commissioner of Social Security* | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g) Plaintiff Patricia K. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Both Plaintiff and Defendant have fully briefed their positions, and this matter is now ripe for review. (Pl.'s Br., Dkt. 16; Def.'s Br., Dkt. 19; Pl.'s Reply, Dkt. 23.) For the reasons below, Plaintiff's request for relief is **DENIED**, and Defendant's request for relief is **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

## I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits on March 1, 2017. (*See* Tr. 187.)[2] At the time, she had completed two years of college and had significant work experience as a medical transcriptionist. (Tr. 215.) Plaintiff alleged she suffered from the following disabling conditions: arthritis, shoulder pain, diabetes, and peripheral neuropathy. (Tr. 214.)

Initially, she alleged a disability onset date of April 28, 2015 (*id.*), however, after consulting with her counsel, she amended the onset date to November 27, 2015, which aligned with her 50th birthday (Tr. 210, 591). Notably, Plaintiff's earnings record limited her eligibility for DIB benefits to December 31, 2016 ("date last insured"). As a result, Plaintiff had to establish that she was disabled and entitled to benefits on or before her date last insured. (Tr. 562); *see also* 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").

The Commissioner denied Plaintiff's application for DIB initially (Tr. 97) and on reconsideration (Tr. 114). On February 21, 2019, at Plaintiff's request (Tr. 133), an Administration Law Judge ("ALJ") held a hearing on Plaintiff's application (Tr. 31-63). An attorney represented Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified. (*Id.*) The ALJ issued her decision finding Plaintiff not disabled on April 3,

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, (Dkt. 8), by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner.

2019. (Tr. 10-23.) Plaintiff unsuccessfully appealed the ALJ's decision to the Agency's Appeal Council (Tr. 4), and she filed a subsequent appeal to the United States District Court for the District of Minnesota. *See Patricia K. v. Saul*, Case no. 20-cv-1111 (DTS) (D. Minn. May 7, 2020), Dkt. 1. In that proceeding, the court granted the Commissioner's motion to reverse the ALJ's decision and remand the case to the Commissioner for further proceedings. *See id.*, Dkt. 28.

On review, the Social Security Appeals Council vacated the ALJ's decision and remanded the case to resolve discrepancies within the ALJ's conclusions. (Tr. 681-682.) In the initial April 3, 2019 Opinion, the ALJ found Plaintiff was limited to sedentary work that did not require bilateral overhead reaching. (*Id.* at 16, 681.) Somewhat contrary to this finding, the Dictionary of Occupational Titles states that the job of "medical transcriber" generally requires frequent reaching, but it does not specify whether overhead reaching is required. (Tr. 681.) During the hearing, the VE testified that Plaintiff could perform her past work as a medical transcriber as it is generally performed without clarifying how that conclusion was consistent with the job's reaching requirement. (*Id.* at 60, 681.)

Relying on the VE's testimony, the ALJ concluded Plaintiff could perform her past work as a medical transcriber as it is generally performed and as she performed it (Tr. 21, 681), even though Plaintiff previously indicated her job required constant overhead reaching (Tr. 228). The Appeals Council concluded that the ALJ's decision lacked adequate support because she failed to reconcile her findings about Plaintiff's reaching limitations and her ability to perform her past work as a medical transcriber. (*Id.*)

3

On remand, the same ALJ held another hearing on July 21, 2021, with Plaintiff, her attorney, and a VE present. (Tr. 614-37.) Plaintiff's attorney agreed to proceed directly to questioning of the VE given the limited issue on remand. (Tr. 619-20.) After the hearing, the ALJ issued her decision on August 4, 2021. (Tr. 588-608.)

In reaching her decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[3] The ALJ determined at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 594.) At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc of the spine; degenerative joint disease of the hip; degenerative joint disease of the shoulders; and diabetes mellitus with neuropathy. (*Id.*) The ALJ also found Plaintiff had the following non-severe impairments: deep vein thrombosis ("DVT"); obesity; hypertension; hypothyroidism; irritable bowel syndrome; obstructive sleep apnea; adhesive capsulitis of the bilateral shoulders; left neck mass/cyst; anxiety disorder; depressive disorder; dysthymia disorder; and panic disorder. (Tr. 594-95.)

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least twelve continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's residual functional capacity, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work, considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i–v); 20 C.F.R. § 404.1520(a)(4)(i-v).

4

At step three, the ALJ concluded none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments"). 20 C.F.R. § 416.920(a)(4)(iii).[4] (Tr. 597.)

The ALJ then determined Plaintiff's RFC. She found that: "[T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally crouch, kneel, balance, stoop, and climb ramps and stairs. No crawling. No climbing ladders, ropes or scaffolds. No overhead reaching bilaterally." (Tr. 600.) In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions and prior administrative medical findings in the record, Plaintiff's medical testing, examination and treatment history, her testimony regarding her symptoms, her employment history, and her activities of daily living. (R. 600-07.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff had past relevant work as a transcriptionist (classified as sedentary, skilled, and SVP 5[5]). (Tr. 607.) The ALJ then determined that Plaintiff could perform her past work through the date last insured as a transcriptionist as generally performed. (*Id.*)

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

[5] "SVP" refers to the "specific vocational preparation" for a given occupation. Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT"). Social Security Ruling (SSR) 00-4p.

5

Based on these findings, the ALJ concluded Plaintiff was not disabled. (Tr. 608.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 579), and this lawsuit followed.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). This "threshold … is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)).

The ALJ must also build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and

resolved." *Id.*; *see also Lee R. v. Kijakazi*, Case no. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, Case no. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

### III. DISCUSSION

Plaintiff argues the ALJ's decision denying her benefits was erroneous for two reasons. First, Plaintiff contends the ALJ improperly classified her mental impairments as non-severe at step two of the sequential analysis. (*See* Pl.'s Br. 15-19.) Second, Plaintiff contends the RFC finding at step four was not supported by substantial evidence in the record as a whole. (*Id.* at 16-25; Pl.'s Reply 4-5.)

**A.   Step Two – Mental Impairments**

Plaintiff asserts the ALJ's analysis at step two was faulty because she improperly weighed the medical evidence and opinions regarding Plaintiff's mental abilities. (*Id.*; Pl.'s Reply at 3.)[6]

**1.   The ALJ's Findings**

In concluding Plaintiff's mental impairments were non-severe, the ALJ stated she

---

[6] Plaintiff raises a new argument in her Reply brief that the ALJ failed to apply a "de minimus standard," and thus the Court ought to apply "heightened scrutiny." (Pl. Reply at 3.) Not only is Plaintiff's litigation tactic procedurally suspect, *see Sidney M. v. Kajakazi*, 630 F. Supp. 3d 1077, 1096 (N.D. Iowa 2022), it is also meritless. As stated below, the ALJ applied the Agency's standards for evaluating the severity of mental impairments after she concluded that none of the paragraph B criteria exceeded a "mild" limitation. (*See* Tr. 597, citing 20 C.F.R. § 404.1520a(d)(1).)

"found little evidence of the claimant seeking out mental health treatment during the period under adjudication." (Tr. 595.) The ALJ also stated Plaintiff "had essentially normal status exams." (*Id.*) In reaching this conclusion, the ALJ cited several sources, including a report by Dr. Alford Karayusuf (Tr. 498) and notes from two medical exams by Dr. Grace Jiang Goggin (Tr. 537, 542). (Tr. 595.)

The ALJ also evaluated Plaintiff's mental capabilities using the "four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments." (*Id.*) These areas, known as the "paragraph B" criteria, are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpart P, App. 1. In assessing whether Plaintiff had any limitations for each criteria, the ALJ considered multiple pieces of evidence, including psychometric testing, activities of daily living, work history, Plaintiff's testimony, the absence of evidence showing need for structured living or hospitalization to treat any mental impairments, and evidence Plaintiff was able to treat her anxiety with medication provided by her primary care provider. (Tr. 596.) In doing so, the ALJ ultimately concluded that Plaintiff had no limitations as to the first and fourth criteria, and that Plaintiff had only "mild" limitations as to the second and third criteria. (*Id.*) Having found that none of the paragraph B criteria exceeded a mild limitation, the ALJ followed the guidance in 20 C.F.R. § 404.1520a(d)(1)[7]

---

[7] Per 20 C.F.R. § 404.1520a(d)(1), if the Commissioner rates a claimant's degrees of

and classified Plaintiff's mental impairments as non-severe. (Tr. 597.)

The ALJ also considered the medical opinion evidence presented, namely the opinions of Dr. Karayusuf and the State Agency psychological consultants. (*Id.*) Based on his examination of Plaintiff, Dr. Karayusuf opined that she was able to perform simple tasks while maintaining pace and persistence and should be restricted to superficial interactions with others. (Tr. 597, 498.) The ALJ placed "little weight on Dr. Karayusuf's opinion because [his recommended limitations] . . . were not supported given [Plaintiff's] psychometric testing during the evaluation and her activities of daily living, mental status exam findings, and very minimal treatment during the period under adjudication." (*Id.*) Moreover, the ALJ concluded Dr. Karayusuf's recommended restriction of superficial interactions with others was unwarranted given Plaintiff's "appropriate and polite interaction with Dr. Karayusuf and treating providers, lack of persistent complaints throughout the record, and evidence of continued functioning." (*Id.*) Although the State Agency psychological consultants did not personally examine Plaintiff, the ALJ placed "great weight" on their opinions because "they provided specific reasons for their opinions" and because "their opinions were consistent with the totality of the evidence of record." (*Id.*)

**2.    Analysis**

The ALJ's classification of Plaintiff's mental impairments as non-severe was

---

limitation as "none" or "mild," he will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."

9

supported by substantial evidence in the record as a whole. The ALJ reviewed and weighed the evidence in the record, assessed how Plaintiff's substantiated symptoms impacted her cognitive abilities according to the paragraph B criteria, and determined Plaintiff's mental impairments were non-severe according to the guidance in 20 C.F.R. § 404.1520a(d)(1). (Tr. 595-97.) The Court does not find any legal error in the ALJ's analysis, nor can the Court conclude that the ALJ's analysis lacked substantial evidence in the record to support it.

In contesting the ALJ's step-two analysis, Plaintiff heavily relies on Dr. Karayusuf's opinion. But the ALJ decided to give that opinion little weight because it was not supported by the objective medical evidence that Dr. Karayusuf cited, nor was it consistent with the state agency physicians' evaluations and other evidence in the record. (Tr. 597.) This analysis met the standards required under 20 C.F.R. § 404.1527.[8] That regulation requires ALJs to weigh medical opinions of non-treating medical sources using the following factors: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009). Though Dr. Karayusuf examined Plaintiff, and the state agency physicians did not, the ALJ determined that Dr. Karayusuf's opinion was not supported or consistent with the other evidence in the record whereas the state agency physicians' opinions were supported and consistent with other evidence. (Tr. 597.) There is no *per se* rule that an ALJ must assign greater weight to an examining physician's opinion than to a non-examining physician's

---

[8] Because the claim was filed on March 1, 2017, the standards for evaluating opinion

10

opinion. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (affirming ALJ's decision to give little weight to Plaintiff's examining physicians' opinions and greater weight to non-examining state agency physician's opinion); *Betts v. Colvin*, Case no. 14-cv-2434 (JJK), 2015 WL 2105855, at *27 (D. Minn. May 6, 2015) (same).

Plaintiff objects to how the ALJ weighed the evidence in the record because: (1) the state agency physicians did not ground their opinions in the evidence in the record; (2) one of the state agency physicians failed to explain why Dr. Karayusuf's conclusions were incorrect; and (3) evidence in the record supports a severe classification. (Pl. Br. at 16-18.) First, contrary to Plaintiff's first assertion, the state agency physicians did ground their opinion in the evidence in the record. At the initial level, Dr. Karayusuf had yet to examine Plaintiff (*see* Tr. 92, 97, showing initial assessment as having been completed on March 24, 2017; Tr. 103, 497, showing Dr. Karayusuf conducted his examination of Plaintiff on June 28, 2017), and Plaintiff points to no other evidence to support her assertion that she suffers from severe mental impairments. The Court is therefore not sure what evidence Plaintiff believes the state agency physician should have evaluated. The consulting state agency physician at the reconsideration level, Dr. Kathleen O'Brien, listed multiple pieces of objective medical evidence in the record, including evidence in Dr. Karayusuf's report,

---

evidence in 20 C.F.R. § 404.1527 apply.

before concluding that Plaintiff's mental impairments appeared to be "non severe."[9] (Tr. 108.)

Second, Plaintiff objects to Dr. O'Brien's opinion because it contradicts Dr. Karayusuf's conclusions without explanation. (Pl. Br. at 18.) It is unsurprising that different physicians reach different conclusions after considering the same evidence; indeed, it is the ALJ's duty to resolve such conflicts, *see Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005) (citing *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)). And as previously stated, the ALJ adequately resolved these conflicting opinions when she assigned little weight to Dr. Karayusuf's opinion and placed great weight on Dr. O'Brien's. The Court analyzes how the ALJ weighed Dr. Karayusuf's opinion, not how Dr. O'Brien assessed Dr. Karayusuf's opinion.

Finally, though Plaintiff may believe substantial evidence in the record as a whole supports her position, the Court cannot reverse the Commissioner's Decision on that basis. *See Clay v. Barnhart*, 417 F.3d at 928 ("If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion."). Rather, the Court must defer to the Decision if there is substantial evidence in the record as a whole to support it. *See Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The ALJ cited multiple pieces of objective evidence in

---

[9] Plaintiff points out that Dr. O'Brien reported Plaintiff's mental impairments as severe in an earlier part of her report. (Pl. Br. at 17; Tr. 108.) But Dr. O'Brien's more detailed explanation clearly shows she did not find Plaintiff's mental impairments to be severe. (Tr.

evaluating the severity of Plaintiff's mental impairments (Tr. 596), and she adequately weighed the conflicting medical expert opinions. The ALJ's analysis belies Plaintiff's contention that the ALJ sought to replace the medical opinions of experts with her own lay opinion. (Pl.'s Reply at 3.) Plaintiff may not like the ALJ's weighing of Dr. O'Brien and Dr. Karayusuf's conflicting opinions, but that is not a basis for disturbing the result. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("Despite Plaintiff's dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence.").

**B.    RFC**

Plaintiff contends the RFC was not supported by substantial evidence, because: (1) the Commissioner conceded Plaintiff could not perform her past work; (2) the medical opinion evidence supports Plaintiff's "contention that her impairments prevent her from performing her past relevant work", in particular Dr. Karayusuf's opinion regarding Plaintiff's mental limitations and the state agency physicians' opinions that Plaintiff is limited to frequent handling, fingering, and feeling; (3) the ALJ improperly "substituted her own evaluation of the medical evidence" for that of trained medical professionals; and (4) the ALJ's second decision was substantially similar to her first decision, which the Commissioner found to be erroneous. (*Id.* at 16-25.)

  **1.    The ALJ's Findings**

In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's medical record (Tr. 601-

---

108.) The Court concludes Dr. O'Brien's initial "severe" notation is a scrivener's error.

605) and the medical experts' opinions in detail (Tr. 605-07). First, in evaluating the medical experts' opinions, as stated above, the ALJ placed little weight on Dr. Karayusuf's opinion concerning Plaintiff's mental capabilities because it was at odds with the objective medical evidence. (Tr. 597.) The ALJ also placed little weight on the state agency physicians' opinions that Plaintiff was only capable of light exertional work with a limitation of frequent handling, fingering, and feeling, because Plaintiff's degenerative disc and joint disease only supported a sedentary level of work. (Tr. 606.) Specifically, the ALJ rejected the handling, fingering, and feeling limitation because: (1) the medical evidence did not show Plaintiff's shoulder complaints as significantly worsening until after the date last insured; and (2) there was a lack of evidence concerning diabetic neuropathy in her hands until 2018, which was also after the date last insured. (*Id.*) Accordingly, the ALJ found "the medical record during the period under adjudication did not support those limitations because the record shows minimal consistent complaints and minimally remarkable examination findings." (*Id*.)

### 2. Analysis

Plaintiff's RFC was supported by substantial evidence in the record as a whole. In determining Plaintiff's RFC, the ALJ evaluated the objective medical evidence in the record and appropriately weighed the opinions of the medical experts. (Tr. 600-07.) Plaintiff's arguments to the contrary are unavailing.

Plaintiff argues that the Commissioner has already conceded that she cannot return to her past work, therefore, she should be considered disabled. (Pl.'s Br. at 19.) But the quote Plaintiff cites is from a document attached to the notice of decision at the reconsideration

level. (Tr. 132.) ALJs do not give weight to prior decisions, and they evaluate the evidence anew at each level of consideration. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,851 (Jan. 18, 2017) ("At each level of the administrative process, we conduct a new review of the evidence whenever we issue a new determination or decision."). Since the ALJ's decision is the final decision of the Commissioner, the conclusions at the reconsideration level about Plaintiff's ability to perform work are not relevant here. *See Lucas*, 960 F.3d at 1068 ("Our task is to determine whether *the ALJ's decision* complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.") (citation modified) (emphasis added); (Tr. 580, "The Administrative Law Judge's decision is the final decision of the Commissioner ….").

Plaintiff asserts the RFC fails to incorporate the limitations from her mental impairments and rehashes many of the same arguments about how the ALJ weighed Dr. Karayusuf's opinion at step two. (Pl.'s Br. at 20-23.) As previously stated, the ALJ properly weighed Dr. Karayusuf's opinion when she gave it little weight. The Court does not have a legal basis for contradicting that conclusion.

Plaintiff also argues the ALJ erroneously set aside the opinions of the state agency physicians who recommended a handling, fingering, and feeling limitation based on Plaintiff's diabetic neuropathy. (*Id.* at 23.) The ALJ discounted the physicians' opinions because their opinions were not supported by the objective medical evidence in the record. (Tr. 602, 606.) Plaintiff was diagnosed with diabetes when she was eight years old. (Tr. 535.) Yet she did not report any neuropathy symptoms in her hands until 2018. (Tr. 488, 530, 545,

15

reporting no neuropathy symptoms; Tr. 534, 540, 557, reporting neuropathy symptoms in feet; Tr. 565, 570, reporting nonspecific, mild neuropathy.) Since Plaintiff's date last insured was December 31, 2016, the ALJ reasonably concluded that the medical record lacked adequate evidence to support the physicians' conclusion that Plaintiff required a handling, fingering, and feeling limitation prior to that date. Plaintiff argues the state agency physicians knew about Plaintiff's last insured date, so they must have taken the timeline into consideration when they made their recommendation. (*See* Dkt.16 at 24.) This argument is meritless because it does not change the fact that there is no objective medical evidence to substantiate their conclusion. The state agency physicians also did not provide an explanation to support their findings that would have required further explanation by the ALJ when evaluating their opinions.

Plaintiff asserts the ALJ is substituting the medical professionals' expertise for her own by putting aside their recommendations. (Pl.'s Br. at 22-24.) The Court disagrees. ALJs are charged with evaluating medical opinions based on a defined set of criteria. *See* 20 C.F.R. § 404.1527; *Wiese*, 552 F.3d at 731. That is precisely what the ALJ did here. Plaintiff cites to *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990), to support her contention. But the ALJ in *Ness* based his decision on his personal observations of the claimant during a hearing. *See id.* The ALJ here did nothing of the sort. The Plaintiff's assertion that the ALJ relied on her own medical expertise is without merit.

Finally, Plaintiff argues that the significant similarities between the ALJ's first decision, which the Commissioner conceded was inadequately supported by the evidence,

16

and the ALJ's second decision support her contention that the second decision is not supported by substantial evidence in the record as a whole. (*See* Dkt. 16 at 23; Dkt. 23 at 5.) Plaintiff's argument is erroneous. The Commissioner voluntarily remanded the matter because the ALJ did not reconcile the possible conflict between Plaintiff's RFC, the ALJ's finding that Plaintiff could perform her past transcription work as actually performed and performed generally, and the DOT's description of that work. (Tr. 228.) Since this issue was narrow and limited, Plaintiff's counsel agreed on remand to have a brief evidentiary hearing with the ALJ. (Tr. 619-20.) In her second decision, the ALJ reconciled this issue when she concluded that Plaintiff could perform her past work as a transcriptionist as it is generally performed. (Tr. 607.) This opinion was based on the VE's testimony at the second hearing that the transcriptionist job as generally performed does not require overhead reaching. (Tr. 607, 621-22.) The ALJ plainly addressed the issue that precipitated the Commissioner's voluntary remand of this matter. (Tr. 579, Appeals Council stating, "We found that the decision complies with the District Court order and the subsequent February 8, 2021 Appeals Council remand orders.".) The Court therefore rejects Plaintiff's argument that any similarities between the language of the first and second ALJ decisions suggest that the latter is as equally unsupported by the evidence as the former.

For all the above stated reasons, the Court affirms the Commissioner's decision and denies Plaintiff's motion.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings here, **IT IS**

**HEREBY ORDERED** that.

1. Plaintiff's request for relief (Dkt. 16) is **DENIED**.

2. The Commissioner's request for relief (Dkt. 19) is **GRANTED**.

3. This matter is **DISMISSED**.

Dated: August 12, 2025              *s/Shannon G. Elkins*
                                    SHANNON G. ELKINS
                                    United States Magistrate Judge